UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

UNITED STATES OF AMERICA

    -against-

                                      Case No.: 13-CR-00921 (KNF)

SAMUEL PIERRE,

               Defendant.

------------------------------------------------------------------X


## DEFENDANT'S SENTENCING MEMORANDUM


                                        Luis O. Diaz, Esq.
                                        Attorney for Defendant
                                        710 West 190th St. Suite D
                                        New York, NY 10040
                                        Tel.: (212) 942-6400


TO:    PREET BHARARA, ESQ.
        United States Attorney
        Southern District of New York
        One St. Andrew's Plaza
        New York, New York 10007
        Attn: Carrie Heather Cohen, Esq.
        Assistant United States Attorney



MEMBER NY, NJ, & D.C. BAR

# LUIS O. DIAZ

### ATTORNEY AND COUNSELOR AT LAW

710 WEST 190TH STREET
SUITE D
NEW YORK, NEW YORK 10040
**TEL: (212) 942-6400 • FAX: (212) 942-3900**

March 17, 2014

Via ECF
Honorable Kevin Nathaniel Fox
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

> Re:   U.S.A. vs. Samuel Pierre
> Criminal Docket No.: 13-Cr-00921-001 (KNF)

Dear Judge Fox:

My office has received the Pre-sentence Report ("PSR") prepared by the U.S. Department of Probation in connection with the above captioned matter which is scheduled for Sentencing before Your Honor on March 27, 2014 at 10:30 A.M.

Defendant Samuel Pierre submits this letter/memorandum addressing objections to the Pre-Sentence Report and issues related to his sentence and to ask the Court for its consideration at sentencing based on the defendant's personal history and characteristics and other sentencing factors under 18 U.S.C. 3553(a), as well as the U.S. Supreme Court's decision in United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005), Kimbrough v. United States, 128 S. Ct. 558 (2007), Gall v. United States, 128 S. Ct. 586 (2007).

## 1.   PROCEDURAL HISTORY

On November 18, 2013, the Defendant entered a guilty plea to Count One of a Misdemeanor Information charging him with Unlawfully Receiving Compensation while Employed by a Member of Congress, in violation of 18 U.S.C. 203(a)(1)(B) and 216(a)(1).

## 2.     THE PROBATION DEPARTMENT'S GUIDELINES CALCULATIONS

The Pre-sentence Report contains the following calculations for Mr. Pierre:

**Base Offense Level:** The guideline for a violation of 18 U.S.C. 203(a)(1)(B) and 216(a)(1), is found in §2C1.2(a)(1) and 2C1.3(c)(1) which provides for a base offense level of 11.

|  | 11 |
|---|---|

**Specific Offense Characteristic:** Because the offense involved more than one gratuity, pursuant to 2C1.2(b)(1), the offense level is increased by two levels.

+2

**Victim Related Adjustments:** None.

0

**Adjustment for Role in the Offense:** None.

0

**Adjustment for Obstruction of Justice:** None.

0

**Adjusted Offense Level - (Subtotal):**     13

**Adjustment for Acceptance of Responsibility:** Prior to Sentencing, the Defendant has demonstrated acceptance of responsibility by entering a plea of guilty in a timely manner, thereby permitting the Government to avoid preparation for trial and permitting the Court to allocate its resources efficiently.   As a result, a two-level reduction is warranted, pursuant to §3E1.1(a).

-2

**Adjusted Offense Level:**     11

**Chapter Four Enhancements:**     None.     0

**Total Offense Level:**     11

The Defendant has no prior criminal convictions.   The Defendant has no objections to a Criminal History Category of I.   Based on an offense level of 11 and a criminal history category of I, the defendant's guidelines range is eight to eleven months imprisonment.

3.    SENTENCING MANDATE AND FACTORS UNDER 18 USC 3553(a)

Mr. Pierre asks that Your Honor consider his personal history and characteristics in light of Booker and Section 3553(a) in fashioning an appropriate sentence.

In United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory guideline system created by the Sentencing Reform Act of 1984 (SRA) was unconstitutional. The Booker decision "modified, the Federal Sentencing Act, as amended, 18 U.S.C. section 3551 et seq., 28 U.S.C. section 991 et seq., to make the Guidelines effectively advisory." After Booker, courts must treat the Guidelines as just one of a number of sentencing factors and must consider all of the factors enumerated in 18 U.S.C. section 3553 (a).

Section 3553(a) comprised of two distinct parts: the so called "sentencing mandate" contained in the prefatory clause of Section 3553 (a) and the "factors" to be considered in fulfilling that mandate. The overriding principle and basic mandate of Section 3553 (a) requires district courts to impose a sentence "sufficient, but not greater than necessary," to comply with the four purposes of sentencing set forth in Section 3553 (a) (2): (a) retribution (to reflect seriousness of the offense, to promote respect for the law, and to provide just punishment); (b) deterrence; (c) incapacitation (to protect the public from further crimes); and (d) rehabilitation (to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner).

In determining the sentence minimally sufficient to comply with the section 3553 (a) (2) purposes of sentencing, the court must consider several factors listed in Section 3553 (a). These factors include:  (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) "the kinds of sentence available; (3) the guidelines and policy statements issued by the Sentencing Commission, including the (now non-mandatory) guideline range; (4) the need to avoid unwarranted sentencing disparity; and (5) the need to provide restitution where applicable. 18 U.S.C. 3553 (a) (1), (a)(5)-(7). Neither the statute itself nor Booker suggests that any one of these factors is to be given greater weight than any other factor. However, it is important to remember that all factors are subservient to Section 3553 (a)'s mandate to impose a sentence not greater than necessary to comply with the four purposes of sentencing.

It should be noted at the outset that the Guidelines are flawed in their construction by the fact that the Guideline range is constructed almost solely of *aggravating* factors. The only mitigating factors are acceptance of responsibility points and role in the offense. Mitigating factors are not part of the Guideline range and the policy statements attached to the Guidelines highly discourage the use of mitigating factors as a basis for *departure*. Thus, since the Supreme Court's decision in Booker the case law is clear that although a Guideline calculation is a necessary beginning point of any sentence consideration, it should not be the final arbiter of what a reasonable and

4

just sentence should be. The case law has also made it clear that a Court can deviate from the Guidelines if it feels that they require a sentence that is greater than necessary to satisfy the factors of § 3553. The Supreme Court has urged each sentencing Court to consider all mitigating factors and not follow the policy statements of the Guidelines that are against the use of mitigating factors. See United States v. Rita, 551 U.S. 338 (2007); United States v. Gall, 552 U.S. 58-60, 50 n.6 (2007). Gall requires that a sentencing Court consider all "kinds of sentences available" by § 3553 even if the Guidelines only recommend a prison sentence. Id. at 59 n.11. In fact, courts are now invited to consider arguments that the applicable Guidelines fail properly to reflect § 3553(a) considerations, reflect an unsound judgment, do not treat defendant characteristics in the proper way, or that a different sentence is appropriate regardless of the Guidelines. Rita, 127 S. Ct. at 2465. Courts "may vary [from Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines," Kimbrough, 128 S. Ct. at 570 (internal quotation marks omitted), and when they do, the Courts of Appeals may not "grant greater fact-finding leeway to [the Commission] than to [the] district judge." Rita, 127 S. Ct. at 2463.

Although the sentencing judge is obliged to consider all of the sentencing factors outlined in section 3553(a), the judge is not prohibited from including in that consideration the judge's own sense of what is a fair and just sentence under all the circumstances. U.S. v. Jones, 460 F.3d 191, 195 (2d Cir. 2006). "A sentencing judge has very wide latitude to decide the proper degree of punishment for an individual offender and a particular crime." United States v. Cavera, 550 F.3d 180, 188 (2d Cir. 2008) (en banc).

In addition, consideration of the guidelines does not mean mandatory adherence, as they are advisory post Booker. See id; See also United States v. Booker, 543 U.S. at 220. In Jones, a case where the defendant was convicted of felony possession of firearms and a detectable amount of marijuana, the Court used its discretion and considered all of the circumstances surrounding the sentence and imposed a lower, non-guidelines sentence, which was held to be neither too high nor too low in light of the circumstances. 460 F.3d at 191. In the instant case, this Court should use its discretion and consider all of the circumstances to impose a sentence that is sufficient and not greater than necessary to comply with Section 3553 (a) (2).

In Kimbrough v. United States, 128 S.Ct. 558 (2007), the Supreme Court held that judges are free to impose a non-guidelines sentence on the basis of policy disagreements with the guidelines, such as the crack guidelines. While "[a] district judge must include the Guidelines range in the array of factors warranting consideration," the Court held, "[t]he judge may determine... that, in the particular case, a within-Guidelines sentence is greater than necessary to serve the objectives of sentencing." Id. at 564.

Furthermore, in Gall v. United States, 128 S.Ct. 586 (2007), the Supreme Court

held that "while the extent of the difference between a particular sentence and the recommended Guidelines range is surely relevant, Court of Appeals must review all sentences – whether inside, just outside, or significantly outside the Guidelines range – under a deferential abuse of discretion standard." Id. at 591. The Court specifically "reject[ed]… an appellate rule that requires 'extraordinary' circumstances to justify a sentence outside the Guidelines range." Id. at 594-595. To hold otherwise would "come too close to creating an impermissible presumption of unreasonableness for sentences outside the Guidelines range." Id. at 595. Indeed, the Court held that the sentencing judge "may not presume that the Guidelines range is reasonable." Id. at 590.

Accordingly, we ask that Your Honor issue a Sentence of probation, which will be both appropriate and not greater than necessary to meet all purposes of Sentencing.

## 4.    MR. SAMUEL PIERRE'S PERSONAL HISTORY AND CHARACTERISTICS

Mr. Pierre sincerely regrets engaging in the unlawful conduct underlying this matter, rather than maintaining a law-abiding life. In a letter addressed to Your Honor, Mr. Pierre characterized himself as being "embarrassed and ashamed" for being "involved with the judicial branch of the law in this capacity." See Exhibit A, Letter from Samuel Pierre. Mr. Pierre regrets disappointing his family, friends, supporters, and mentors, and asks that Your Honor provide him with "the opportunity to make it right." Id.

Mr. Pierre was born on September 25, 1984 in Brooklyn, New York to the union of Bernard M. Pierre, who is sixty-two (62) years old, and Madone Singer, who is sixty-nine (69) years old. Mr. Pierre's parents migrated from Haiti to the United States in order to provide their children with a chance at a better life. Mr. Pierre's father, who currently suffers from hypertension, previously owned and supervised an auto school business and now serves as an Associate Pastor. Mr. Pierre's mother worked as a maintenance worker and is now retired. Mr. Pierre has two full siblings and six paternal half-siblings. Mr. Pierre's full siblings are Judith Pierre, who is twenty-three (23) years old and resides in Brooklyn, New York; and Naomie Belany, who is thirty-one (31) years old, is employed as a bank examiner for the Office of the Comptroller of Currency, and resides in Plainfield, New Jersey. Mr. Pierre's six half-siblings are: Habackus Pierre, who is thirty-four (34) years old and is employed as a management consultant for an information technology firm; Kerline Pierre, who is thirty-one (31) years old and is employed as a paralegal; Claudy Pierre, who is twenty-nine (29) years old and is employed as assistant general manager of a DoubleTree Hotel; Davidson Pierre, who is twenty-seven (27) years old, and is employed as a barber; Elisha Pierre, who is twenty-three (23) years old and is employed as a maintenance manager for several regional schools; and Sadrack Pierre, who is twenty-one (21) years old and is enrolled as a student in the New School University in New York City.

Mr. Pierre's parents instilled in Mr. Pierre a hard-work ethic. Mr. Pierre's

6

academic background and employment history are evidence of his hard-work ethic and dedication to succeed in his academic studies and career. Mr. Pierre attended St. John's University as an undergraduate student from 2002 to 2006. As an undergraduate student, Mr. Pierre was a communications major with a minor in political science. Mr. Pierre was highly involved in college clubs and organizations. During his time in St. John's University, he was Chairman of the Research and Development Committee for the Student Government and formed a part of the student government's transition team, in which he helped to facilitate changes in elective office positions.

More importantly, during his college years, Mr. Pierre founded a Communications Club and founded an organization called Building Leaders on Campus. As founder, Mr. Pierre's mission was to train and mentor freshmen and sophomores, especially those interested in student government. As an alumnus of St. Johns and founder of the communications club, Mr. Pierre has been asked to give the yearly keynote address for the communications club. In addition, Mr. Pierre was named St. John's University Alumni of the Month for February 2013. Mr. Pierre graduated from St. John's University with an Associates Degree in Business Management and a Bachelor's Degree in Communications Arts with a minor in Political Science.

Furthermore, looking to further develop his leadership skills, Mr. Pierre attended New York University's Robert F. Wagner Graduate School for Public Service. In July 2009, Mr. Pierre was successful in completing a Fellowship for Emerging Leaders in Public Service. In September 2013, Mr. Pierre enrolled in Columbia University's School of International and Public Affairs. Mr. Pierre is currently pursuing an Executive Master's Degree in Public Administration with a concentration in Advanced Management and Finance. Mr. Pierre has been strongly dedicated in pursuing his educational goals.

Mr. Pierre's extensive employment history reinforces his hard-work ethic and desire to better the lives of others. From February 2007 to August 2009, Mr. Pierre served as Brooklyn South Liaison, District Director, for United States Congressman Ed Towns in Brooklyn, New York. From August 2008 to May 2010, Mr. Pierre served as Deputy Director for Community Affairs, Haitian Liaison, for New York State Assemblyman Alan Maisel in Brooklyn, New York. From May 2010 to Present, Mr. Pierre served as Brooklyn Borough Director for the Community Affairs Unit for the City of New York. In November 2011, Mr. Pierre was promoted to Director Of African American & Caribbean Affairs Citywide for the New York City Mayor Michael R. Bloomberg, New York, NY, and still holds that position. In additional to working in the political sector, in November 2012, Mr. Pierre began teaching Non-profit Management and Community Organizing at Medgar Evers College as an adjunct instructor.

In addition to having a successfully employment history, Mr. Pierre has also participated in numerous voluntary positions. In July 2006, Mr. Pierre served as a

7

volunteer staffer for Carl Andrew's campaign for United States Congress, in Brooklyn, New York. In January 2007, Mr. Pierre served as a volunteer coordinator in the campaign of Mathew Eugene for City Council, in Brooklyn, New York. In June 2007, Mr. Pierre served as a volunteer staffer during the campaign of Sandya Simpson for Surrogate Court Judge. In addition, during August 2007, Mr. Pierre served as a volunteer staffer during the campaign of Ernest D. Davis for Mayor in Mount Vernon, New York. In June 2012, Mr. Pierre served as lead campaign strategist in the campaign of Josue Pierre for New York State Committeeman in Brooklyn, New York. Lastly, during June 2012, Mr. Pierre served as senior campaign advisor in the campaign of Rodneyse Bichotte for New York State Committeewoman and State Assembly in Brooklyn, New York.

Furthermore, Mr. Pierre has been and still is a member of various reputable organizations such as the National Urban League, Kings County Democratic Organization, Alpha Gamma Lambda Chapter, New Leaders Council, Jewish Community Relations Council, Brooklyn Community Board 18, Thomas Jefferson Democratic Club, and has served as Chairman of the Pan-African Men's Committee. In addition, Mr. serves as the Chairman of Research and Development for the Student Government at St. John's University. Moreover, Mr. Pierre is a 2007 graduate of the Congressional Black Caucus Political Boot Camp and 2007 recipient of the Thomas R. Fortune Community Service Award. Mr. Pierre also serves at the co-chair of the Young Men's Initiative Committee, whose mission is to help college and high school students graduate college and obtain jobs.

Notably, Mr. Pierre is a founder of the Haitian American Caucus in New York, New York. The Haitian American Caucus is a non-profit 501(c) 3 organization whose mission is to educate and promote Haitian-Americans in the United States and Haiti. The non-profit has locations in New York City and Croix de Bouquet, Haiti. Mr. Pierre travels yearly to Haiti, before the beginning of the school year, in order to address and motivate the students so that they may succeed in their academic studies.

Mr. Pierre is a devout member of the church. Mr. Pierre and his family are members of The Temple of Restoration, located in Brooklyn, New York, and attend church two days a week. In addition, Mr. Pierre serves as the music director for the church, managing approximately thirty (30) musicians throughout thirteen locations of the church situated in different countries around the world. Also, from February 2002 to March 2010, Mr. Pierre also served as lead pianist for the Church of God of Prophecy, located in the Bronx, New York. Mr. Pierre has also participated in a yearly charity football game in Brooklyn, New York, for children with disabilities.

Mr. Pierre's family and friends have stayed very supportive of Mr. Pierre throughout this process. The attached letters from Mr. Pierre's family and friends characterize him as being "reliable," "meticulous," "honest," and "sincere." See, Letter of Madone Singer, Mr. Pierre's Mother, attached as Exhibit B; Letter of Farah Louis,

Executive Vice President of the Haitian American Caucus, attached as *Exhibit C*; Letter of Sadrack Belony, President of the Haitian American Caucus, attached as *Exhibit D*; Letter of Francois Jeanty, Program Director at New York Haitian Leaders Fellowship, attached as *Exhibit E*; Letter of Timothy Compere, Mr. Pierre's Mentee, attached as *Exhibit F*; Letter of Ryan Merola, Student at Brooklyn Law School, attached as *Exhibit G*; and Letter of Brandon Gibson, attached as *Exhibit H*.

Furthermore, in the letter from Farah Louis, Executive Vice President of the Haitian American Caucus, Mr. Pierre is remarked as being "a pillar in the Haitian community in New York City." See, *Exhibit C*. Mr. Pierre has dedicated a significant portion of his life to helping and mentoring others, especially people from minority backgrounds. In addition, by serving as a mentor and advocate, Mr. Pierre has demonstrated a tremendous amount of care for the academic and career advancement of young members of the community. Mr. Pierre's mentee, Timothy Compere, states in his letter that Mr. Pierre is a man that cares for people, a man that he would trust with his life, and a man that sincerely cares for his family and the community. See, *Exhibit F*. We respectfully request that Your Honor take into account the foregoing information when fashioning a sentence that is both fair and not greater than necessary to meet all purposes of sentencing.

5.    OFFENSE CONDUCT

In fashioning a sentence sufficient enough to punish Mr. Pierre and deter him and others from engaging in similar unlawful conduct, the Court must keep in mind that this is Mr. Pierre's first interaction with the criminal justice system. Mr. Pierre's involvement in the actions underlying this matter can be best characterized as a mere lapse of judgment. Mr. Pierre, without understanding the full consequences of his actions, regrettably accepted clothes and other gifts from his co-defendant while employed as a Congressional employee. Although the crime resulted in financial harm upon the victims, the non-violent nature of the crime and the fact that the unlawful conduct only lasted a few months warrants a non-guidelines sentence of probation.

6.    MR. PIERRE'S FIRST ARREST/LOW RECIDIVISM

The instant matter represents Mr. Pierre's first arrest and conviction. The underlying unlawful behavior in which Mr. Pierre engaged in was momentary and unrepresentative of his true moral character. A prison sentence is an ineffective and unreasonably costly method of deterrence. Any period of incarceration would only serve the purpose of halting Mr. Pierre's academic studies, minimizing the prospects of employment, and separating him from his family and friends.

It has been shown that longer sentences do not deter future criminal conduct or lower the chances of recidivism. According to the factors given in the United States Sentencing Commission's report, *Measuring Recidivism*, Mr. Pierre has a low chance of

recidivism. The first factor to consider in calculating the chances of recidivism is the number of previous convictions. Studies have found that first offenders have a 3.5% chance of recidivism; those with one criminal history point have a 5.5% chance of recidivism; and those with two or more criminal history points have a 10.3% chance of recidivism. Mr. Pierre is a first time offender, and thus runs a very low risk of recidivating.

The second factor to consider is employment. Mr. Pierre, as outlined above, has extensive employment history. Mr. Pierre has shown significant dedication to public service and has been able to maintain steady employment upon graduating from college. In his letter to Your Honor, Mr. Pierre reassures Your Honor that, if allowed to do so, he will continue to serve his community in the future. See, *Exhibit A*. A third factor to consider is education. Mr. Pierre is a college graduate and is currently pursuing an Executive Master's Degree in Public Administration. Mr. Pierre has not let the instant matter negatively affect his academic studies and is determined to graduate from Columbia University's School of International and Public Affairs.

A fourth factor to consider is family. Mr. Pierre continues to maintain strong ties with his family. His family has been very supportive of him during these tough times. Mr. Pierre has demonstrated an immense amount of regret and has acknowledged that what he did was wrong. Mr. Pierre wishes to put this behind him and live a law-abiding life. A final factor to consider is whether the offender committed a crime of violence. Mr. Pierre's instant offense is a non-violent offense; thus, resulting in a lower risk of recidivism for Mr. Pierre.

Furthermore, this Court must consider "general deterrence" when determining a sentence. Experts in the field of deterrence have routinely found that there is no empirical relationship between the length of a sentence and specific or general deterrence. Notably, researchers have found that long/severe sentences have proven to increase the rate of recidivism among offenders. See Lynne M. Vieraltis et al., *The Criminogenic Effects of Imprisonment: Evidence from State Panel Data* 1974-2002, 6 Criminology & Pub. Pol'y 589, 591-593 (2007); U.S. Sentencing Commission Staff Discussion Paper, *Sentencing Options under the Guidelines* 18-19 (Nov. 1996), available at http://www.ussc.gov/SIMPLE/sentopt.htm; Miles D. Harer, *Do Guideline Sentences for Low Risk Drug Traffickers Achieve Their Stated Purposes?*, 7 Fed. Sent. Rep. 22 (1994).

The common misconception is that longer sentences are effective in deterring others from engaging in criminal activity. However, scientific research has found that there is no connection between the length of a sentence and deterrence. Of course, researchers have found that "deterrence works;" however, only in the sense that our criminal justice system, in general, is effective in deterring some criminal conduct. What this Court should consider is "marginal deterrence," that is, whether any particular term of incarceration would be effective in deterring criminal conduct. The scientific research available suggests that there is no significant relationship between

sentence-length and deterrence.   In fact, there is empirical research that suggests that "increases in severity of punishments do not yield significant (if any) marginal deterrent effects." Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime and Justice: A Review of Research 28-29 (2006).   Mr. Pierre understands the wrongfulness of his actions in the instant matter, and has accepted responsibility for the unlawful conduct.   Before Your Honor is an educated man who has dedicated a significant amount of time and energy to better the lives of others.  As a mentor, adjunct instructor, and politician, Mr. Pierre has advocated for better life conditions for many disadvantaged, underprivileged members of the New York City community.

## 7.   FINE AND RESTITUTION

According to Probation, Mr. Pierre has the ability to pay a fine. See Presentence Investigation Report (PSR) ¶96.   However, Counsel respectfully requests that Your Honor not impose a fine.  As result of this conviction, Mr. Pierre will be required to pay full restitution to the victims in this matter.   Imposing a fine in addition to the restitution amount will present a significant financial burden on Mr. Pierre.   Thus, Counsel requests that Your Honor not impose a fine.

## 8.   CONCLUSION

We ask that Your Honor take into account Mr. Pierre's personal history and characteristics; rigorous academic engagement; extensive employment history; sincere dedication to his family, the community, and public service; lack of a criminal history; and his low risk of recidivism, in fashioning an appropriate sentence.   The misdemeanor conviction, in and of itself, already presents a significant hardship in Mr. Pierre's future prospects for employment.   We respectfully request that Your Honor impose a sentence of probation.  Such sentence is both appropriate and not greater than necessary to meet all purposes of Sentencing.

Respectfully submitted,

LUIS O. DIAZ, ESQ.

Cc:    Carrie Heather Cohen, Assistant U.S. Attorney (Via ECF)
       Pamela Perea, U.S. Probation Officer (Via electronic mail)

# EXHIBIT A

February 5, 2014

The Honorable Kevin Nathaniel Fox
United States Magistrate Judge
Chief U.S. Magistrate Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007
Courtroom: 228

Dear Judge Fox,

I am contacting you about my case, as a defendant in one of your upcoming court cases. I am being charged with a Class 1 Misdemeanorfor receiving a gratuity while employed by a Member of Congress in relation to particular matters pending before the United States Department of Homeland Security. I am reaching out to you because I am very embarrassed about this matter and would like to ask you for your leniency in regards to my sentencing.

As a young man growing up in the Crown Heights and Canarsie sections of Brooklyn I was always taught by my parents to always appreciate everything that I have. Although I've been in some pretty rough neighborhoods I never adopted to my surroundings. My parents were working class Immigrants who believed in hard work and dedication. These principals were instilled in me from very young and I never forgot them. I remember my mother always telling me to keep God at the center of my life and everything will be ok. If He is the foundation in my life no matter what trial or tribulation I may encounter I will make it out all right. Judge Fox, I stand here today as living testament that those words of encouragement my mother constantly spoke to me were true. 2013 has been by far the hardest year in my entire life. I remember the morning I received a phone call that the Federal Authorities had a warrant for my arrest that was the hardest moment ever. See Judge Fox, I've never been in trouble before. I've never been arrested, or dealt with the law outside of my work in the community. It was the most devastating moment in my life sitting in a jail cell waiting to see a judge about a matter back in 2009. The week I was arrested I received my acceptance letter to Columbia University's School of Public Affairs to participate in the Executive Master of Public Administration program that Tuesday. Sitting in that jail cell awaiting a judge was a very emotional moment for me. Here I was a new graduate student with hopes of educating myself so that I may do better for society yet I was sitting in a Federal jail cell. It was the poem " Test of a Man" that I learned while being initiated into my fraternity, Alpha Phi Alpha, that kept me from breaking down and crying right in that cell. One of the lines in the poem states, " A man when driven against the wall still stands erect and takes the blows of fait" I felt like I was driven against the wall but I stood up and took the blows as they came.

I apologize for the infraction I committed and I am embarrassed and ashamed that I am involved with the judicial branch of the law in this capacity. Judge Fox, I must admit that

I knew better than to be involved with parties and individuals who had other motives than that of one who is a public servant. I allowed myself to go against the very principals my parents, teachers, pastors and community leaders taught me my entire life. I apologize for my involvement in this matter and I can guarantee that it will never happen again. I beg you Judge Fox to please reprimand me in fashion that will allow me to continue to have a clear record. I understand the law and what the parameters suggest however I am asking that you take extraordinary measures to gracefully allow me to continue to keep my record clear while paying my debt to society. I am fully aware of the penalties that come with a Class 1 Misdemeanor however I know that you have the power and capability to reprimand me without it affecting my record.

Please Judge Fox, I beg that you allow me to continue to serve the community with a clear record. I have 9 plus years in public service and I plan to continue serving my community in the future. Judge Fox, I want to be able to tell the troubled young men in urban communities that they can have a second chance at life as I was given a second chance as well. I want to serve as an example to young men and women and show them that even though you were beat down and depressed there is an opportunity to rise again. I studied the lateRev. Dr. Martin Luther KingJr during my undergraduate studies at St. John's University and one thing I remember vividly was the time he was arrested and jailed. Dr. King did not waver from his non-violent Ghadian strategy but used his time alone in his jail cell to have a serious conversation with God. I believe Dr. King's life was truly changed after his brief stay at the Birmingham City jail and it gave him a clear understanding of what his mission was, something he would have not received had he not been in solitary confinement. I take this example and use it in my experience. I disappointed my family, friends, supporters, and mentors. I understand my wrongdoing and I humbly ask for the opportunity to make it right.

I hope you consider this information in regards to the charges I am facing. Whatever the outcome of the trial, I want it to be known that I understand my offence and I am willing to do whatever it takes to correct this matter.

Thank you for taking the time to hear my thoughts on this matter.

Sincerely,

Samuel Pierre

EXHIBIT B

February 13, 2014

The Honorable Kevin Nathaniel Fox
United States Magistrate Judge
Chief U.S. Magistrate Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007
Courtroom: 228

Dear Judge Fox,

I am contacting you about my son Samuel Pierre, a defendant in one of your upcoming
court cases. Sam is being charged with a Class 1 Misdemeanor for receiving a gratuity
while employed by a Member of Congress in relation to particular matters pending before
the USDHS. I am reaching out to you because Sam is my only son and I really need your
help in this matter.

I am a Haitian American who migrated to the United States in the early 1980's. When I
first came to America I was a Haitian immigrant and it was one of the scariest moments of
my life moving to a country where not only did I not understand English but the culture
and the way of life. Coming to America was one of the best decisions I've ever made but
having my children here in America will always take precedence. 34 years later I am now
an American citizen who has lived the American dream becoming a successful
homeowner and raising 3 beautiful children. I write to you about my son Samuel. Sam is
my only son and my most prized possession. I named him Samuel because I was told that
I could never have children just like Anna from the Bible. When God blessed me with a
son I promised I would name him Samuel and rededicate him to God just as Anna did
with Samuel. I raised my son Samuel with Godly principles and always taught him to be
honest and to hold himself to the highest standards, God's standards. I enrolled him into
Christian schooling since he was 3 years old because I wanted him to have a Christian
foundation. The cost of private education for a Haitian immigrant was great, however I
was willing to do whatever it took to make sure my children grew up to be honest,
upstanding, law abiding citizens. I did not have much means but I made due with what I
earned. I am a retired maintenance worker who retired from the Port Authority Bus
Terminal Custodial Staff after 22 years of service. Cleaning after customers making sure
the toiletries were fully supplied with toilet paper, mopping the floors after spills and
caring for the homeless and intoxicated may seem daunting and rather demeaning but I
was willing to wake up every day to come to work because I knew one day my children
would live a better life than I could ever have. I preached education and religion to my
children and I am proud to say all three of them have college degrees and one, Samuel,
currently pursing his second degree.

I mention all of this because I want you to understand that my son Samuel has never been
in an environment to conduct himself improperly. Samuel has continually made me proud

first by completing high school early and going out into the work force at the age of 17 while waiting to enroll at St. John's University. Since young, Sam has taken after my love for public service and dedicated himself to helping people at an early age. I remember when Samuel told me he was going into public service at the age of 18 to help his Haitian community I was reluctant at first until I realized that this has been his passion since he was born. Samuel has accomplished many things in his 29 years on this earth and I would like for him to continue to accomplish more. As a leader in my church, Beraca Baptist Church, I find pride in telling the at risk young men that they need to work hard to change their lives. I love the fact that I can use my son as an example of a young man who did not need to turn to drugs or alcohol as an answer to his problems but he continues to follow God. Most of all I love the fact that I can tell them that my son has NO CRIMINAL RECORD.

Judge Fox, please do not put this infraction on my son's record. I understand Samuel must pay for his actions and he is willing to do whatever necessary to pay his debt to society but I humbly ask that you do not add this infraction to his record. Samuel's dream is to one day become the Secretary of State of the United States of America where he can serve his country to the best of his ability. I am not sure if this infraction to his record will keep him from accomplishing this goal but it would really hurt me to know that he cannot achieve his dream due to a mistake he made back when he was 23 years old. I am a woman of faith and my religion preaches that you must make your ask and pray to God to help deliver that ask if you want something and that is what I am doing. I beg you Judge Fox, please discipline Samuel in a way where his record can remain clear. Whether it is long extended community service hours, probation and/or educating other young African American men about the dangers of being around the wrong crowd Samuel can do all of the above.

I love my son and I do truly believe he made a bad decision. He has spoken to me and expressed how this process has impacted him and made him a better man. Samuel has learned from his mistake and has promised me that he will never be involved in anything remotely close to this situation. Samuel is truly apologetic for his actions in this case and is willing to do whatever it takes to rectify this situation.

Thank you for taking the time to hear my thoughts on this matter and please take my request under serious consideration.

Sincerely,


Madone Singer
Samuel's Mother
1.718.930.6340
Exodus 14:14

EXHIBIT C

February 3, 2014

The Honorable Kevin Nathaniel Fox
United States Magistrate Judge
Chief U.S. Magistrate Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007
Courtroom: 228

Dear Judge Fox,

I am contacting you about Samuel Pierre, a defendant in one of your upcoming court cases. Mr. Pierre is being charged with a Class 1 Misdemeanor for receiving a gratuity while employed by a Member of Congress in relation to particular matters pending before the USDHS. I am reaching out to you because Sam has not only been a long-time friend, but he is also a pillar in the Haitian community in New York City.

Sam and I met 17 years ago as choir members for a local community choir in East Flatbush, Brooklyn. Ever since I met Sam, he has been reliable, meticulous, and professional. Most importantly, Sam always had a passion for helping people. I have always depended on him to be a mentor and he has encouraged me to pursue my dreams pursue a career in media and communications. Sam's adept at fostering healthy discourse in small groups of peers as well as effortlessly capturing the attention of larger groups. He has created programming opportunities and activities, encouraging an environment of inclusion for youth in the Haitian community.

In addition to his hard work in civic engagement, Sam has co-founded a nonprofit organization with a mission to educate and elevate youth and young adults. He has proven himself to be a gentle and selfless individual when it comes to matters of social justice and is an expert at efficiently managing his time so he can be a part of all of these various communities.

I hope you consider this information in regards to the charges Samuel is facing. Whatever the outcome of the trial, I want it to be known that Samuel is an upstanding citizen of this country understands his offence and is willing to do whatever it takes to correct this matter.

Thank you for taking the time to hear my thoughts on this matter.

Sincerely,


Farah Louis
Executive Vice President, Haitian American Caucus
(347) 893-5464/Flouis@hacus.org

# EXHIBIT D

February 2, 2014

The Honorable Kevin Nathaniel Fox
United States Magistrate Judge
Chief U.S. Magistrate Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007
Courtroom: 228

Dear Judge Fox,

I am contacting you about Samuel Pierre, a defendant in one of your upcoming court cases. Mr. Pierre is being charged with a Class 1 Misdemeanorfor receiving a gratuity while employed by a Member of Congress in relation to particular matters pending before the USDHS. I am reaching out to you because Sam is not only my brother-in-law, but he is also an amazing friend.

I first met Samnearly 16 years ago when I was I was young, in high school and just trying to start my life. At a time when I did not really know what I wanted to do in life or where I wanted to go as far as career; Sam, even back then, always seemed to know what he wanted to do in life: To help people and to help the Haitian community. Seeing his mom and plenty of other Haitian men, women, and children in the community struggle to live day to day drove him to want to dream big. Even at a young age, he decided that he would do all he can to make life better for these individuals. Sam's passion, drive and zeal for helping the Haitian community can be seen with every youth, young adult, adult and elderly person who knows him. They know he is the "go to" guy who always has their best interest at heart and that he will provide positive guidance to them.

Throughout the 16+ years I have known Sam, he has been nothing but honest, sincere, and professional in everything that he says and does. The most important thing in Sam's life is undoubtedly his family and his love for his community. I have seen him make countless of sacrifices for his mom, his sisters, brothers and cousins. Sam goes out of his way to ensure all is well to the best of his ability.

Sam has a lot of potential and the future looks bright for him. He is currently pursuing a master's degree at Columbia University in addition to numerous projects that, once completed, will directly improve the lives of Haitian Americans in the Brooklyn, New York area as well as hundreds of children in a particular community in Haiti. Sam's vision and passion for helping his fellow man has led him and two friends to be founders of the Haitian American Caucus, a 501c3 not-for-profit organization whose sole mission is to improve the lives of Haitian American and the Diaspora community in the New York area.

Mahatma Gandhi once said, "Freedom is not worth having if it does not include the freedom to make mistakes." Albert Einstein one said "Anyone who has never made a mistake has never tried anything new." Bram Stoker once said "We learn from failure, not from success!" Sam Pierre made a mistake that has caused him to be at the mercy of your judgment.I strongly believe, based on the Samuel Pierre I have known for over 16 years, that Samuel Pierre has learned from this mistake, and will use it as a building block to do even more great things. I hope that you find it in your heart not to punish this young man for the one mistake and one lack of judgment that he made. Look at his character, look at his potential, and look at all of the people that will benefit from the good that this young man has done and will continue to do as long as God place a breath in his lungs.

Please consider this information in regards to the charges that Samuel is facing. Whatever the outcome of the trial, I want it to be known that Samuel is an outstanding, upstanding, ideal citizen of this country, he understands his offence andhe will and is willing to do whatever it takes to correct this matter. And most importantly, he will not repeat it or anything related to it.

Thank you for taking the time to hear my thoughts on this matter.

Sincerely,

Sadrack Belony
President
The Haitian American Caucus
732-896-0850/sbelony@hacus.org

EXHIBIT E

February 1, 2014

The Honorable Kevin Nathaniel Fox
United States Magistrate Judge
Chief U.S. Magistrate Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007
Courtroom: 228

Dear Judge Fox,

I am contacting you about Samuel Pierre, a defendant in one of your upcoming court cases. Mr. Pierre is being charged with a Class 1 Misdemeanor for receiving a gratuity while employed by a Member of Congress in relation to particular matters pending before the USDHS. I am reaching out to you because Sam has not only been a long-time friend, but he is also an extraordinary person.

I met Sam years ago when I was in a dark place. My mother recently passed away and I was on the road to self-destruction. I was around the wrong people, and involved in the wrong things. My father along with my aunts and uncles recommend I start getting some positive influence in my life so I got into music and found a piano teacher that was willing to teach me for free as a favor to my late mother.

This is when I met Sam. Sam was an amazing piano teacher and much more. When I went to Sam for lessons, the lessons didn't end at the end of our hour session. He was always concerned about my schooling and if I didn't apply myself to reach my full potential, he'd push me to reach it. Sam taught me never to settle for less than what I deserve. Sam then encouraged me to get involved in student government at my school.

Being in student government allowed me to see and identify the needs of other people and this is what got me involved in my community. Sam has given me opportunity after opportunity to get involved and volunteer in my community. Sam has been nothing but honest, sincere, and professional from day one, and most importantly I have always felt that Sam has an incredible talent for helping people. I have always depended on him any time I needed help, weather it be with music, schoolwork, or even a project I was doing at my job.

The most important thing in Sam's life is undoubtedly his family and his love for his community. Sam would do anything for the Haitian community and his family. I know this because I myself am a testament and a product of Sam going above and beyond to help someone. He didn't have to do anything but give me an hour session of piano lessons.

Nonetheless, Sam possesses an inner obligation to not just help someone or something but to follow through with what he started as he did with me. Sam started to teach me how to be a better piano player along with teaching me how to be a better man without taking away responsibilities from my father. If fact Sam and my father worked together to get me out of the dark place that I was in.

Till this day Sam continues to guide me to be a better person and achieve the highest accomplishments in whatever I set my mind to do. Sam is constantly putting his family and his community before his needs. Sam is frequently and consistently serving the community and his family, and I can assure this personal story is one of many thousands of stories that can describe how Sam always goes out of his way to either help a group of people or just even one person.

I hope you consider this information in regards to the charges Samuel is facing. Whatever the outcome of the trial, I want it to be known that Samuel is an upstanding citizen of this country, understands his offence and is willing to do whatever it takes to correct this matter.

Thank you for taking the time to hear my thoughts on this matter.

Sincerely,

François Jeanty (Sam's Mentee)
Program Director, New York Haitian Leaders Fellowship
CAUSE New York, Jewish Community Relations Council
1.347.278.5015/jeantyf@jcrcny.org

# EXHIBIT F

January 31, 2014

The Honorable Kevin Nathaniel Fox
United States Magistrate Judge
Chief U.S. Magistrate Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007
Courtroom: 228

Dear Judge Fox,

I am contacting you about Samuel Pierre, a defendant in one of your upcoming court cases. Mr. Pierre is being charged with a Class 1 Misdemeanor for receiving a gratuity while employed by a Member of Congress in relation to particular matters pending before the USDHS. I am reaching out to you because Sam has not only been a long-time friend, but he is also an extraordinary person.

I met Sam years ago at an extremely low point in my life. In addition to being young and stupid, I had no knowledge or optimistic perspective of the society I occupied. Allowing me to intern for a congressional elected official, Sam taught me how to dream. He turned my inquisitive nature into reason and logic for the betterment of not only myself but for those around me. On my quest to achieve success in a land of opportunity, Sam has been more than just a friend, but a mentor. He is a person that I aspire to become in a plethora of ways. As a result of his mentorship, I have learned what it truly means to be a public servant in copious areas of my life, which include but is not limited to my family, school, community, and church.If I become anyone in this great country, I owe much of my success to this man who never wanted more than to see me become better each day.And in spite of the many obstacles life would present; he would always remind me of Frederick Douglass adage, "There is no progress without struggle."

He has been nothing but honest, sincere, and professional from day one, and most importantly I have always felt that Sam has an incredible talent for helping people. I have always depended on him any time I needed help whether it was music lessons, academic motivation, emotional support or basic fundamentals with dealing with different personality types in my home. The most imperative thing in Sam's life is undoubtedly his family and his love for his community. He would do anything for the Haitian community and his family that he invests so much of his energy and time on. Anyone can extrapolate from his life that Sam was destined to help people so much that he would put others at a higher pedestal than himself.

In an attempt to rationalize how one individual is able to help multitudes of people, I would say to myself that Sam had a clan of clones. It took me years of countless political deliberations regarding American jurisprudence and society to realize that it is his dedication andinner desperation that fans the flames of hope that he embodies as a

person. Due to his honest nature, the truth was always told to me during my times of needed counsel even if the truth would hurt. Sam is a man that cares for people and a man that I would trust with my life.

I hope you consider this information in regards to the charges Samuel is facing. Whatever the outcome of the trial, I want it to be known that Samuel is an upstanding citizen of this country, understands his offence and is willing to do whatever it takes to correct this matter.

Thank you for taking the time to hear my thoughts on this matter.

Sincerely,


Timothy Compere (Sam's Mentee)
Student at Medgar Evers College
1.917.470.5391/timothycompere@gmail.com

EXHIBIT G

Mr. Ryan Merola
1818 East 37 Street
Brooklyn, NY 11234
E-mail: Ryan.Merola@gmail.com
Mobile: (917) 697-4628

February 2, 2014

The Honorable Kevin Nathaniel Fox
United States Magistrate Judge
Chief U.S. Magistrate Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007
Courtroom: 228

Dear Judge Fox,

I write to you regarding Samuel Pierre, a defendant in one of your upcoming court cases. Mr. Pierre is being charged with a Class 1 Misdemeanorfor receiving a gratuity while employed by a Member of Congress in relation to matters pending before the Department of Homeland Security. Despite the charges and their implication to the contrary, Sam is a good man and a law-abiding citizen. I beg you to take into consideration my experiences with Sam while you hear and deliberate on his pending charges.

Sam and I first met in April 2006, when we both began volunteering for the same local political organization. We were young and excited about local politics, and in each other we found a kindred spirit. Sam was (and remains) precocious and bold, confident in his ability to relate to and lead people. He was more than just a personality: he came from a upbringing that lack privilege and amenities; he was self-taught and highly motivated to do good. He loved to engage with others and, when he encountered anyone in need, whether the person be friend or stranger, take some action to make better whatever the situation. Not long after we first met, he sat me down with several of his friends who were having trouble in college and younger men and women from his church who were having trouble with the college application process to aid them with their work and college essays, respectively. That spirit of altruism, which is exactly what it was, is the foundation of my understanding of who Sam is and what Sam does.

In 2008, when he thought young black men and women were underrepresented on local community boards in Brooklyn and in neighborhood civic associations, he rallied the members of his church and neighboring parishes to get involved with their community organizations. I helped him compile lists of community organizations all around Brooklyn and get the information out about where people could go to join. Not only did he increase civic participation through his efforts, he actively addressed an issue that people love to pay lip service to, underrepresentation in civic participation. Sam saw no benefit from it to his immediate life or to his family or friends. He did what he did

because it was the right thing to do for his community when one else had taken up the issue.

His best work, though, began in 2009. Sam and several of his friends founded the Haitian American Caucus ("HAC"). I was there the night it began. Six of us met in St. John's, Sam's alma mater, and brainstormed on the problems afflicting the Haitian American community: language barriers; lack of affordable healthcare; lack of immigration help; economic stress in Haiti that weighs on families in New York; inability to recover from the 2009 earthquake; crime and lawlessness across the country; and much more. Sam's entire family comes from Haiti. So do half of his lifelong friends. So did many of the constituents he served at the Congressman's office. Yet no one had yet come up with a local and effective not-for-profit organization to aid the Haitian community. By 2009, Sam finally felt as if his network and professional position offered him the opportunity to address the needs of the Haitian community on a broad level,so he spearheaded the stand-up of the Brooklyn-side of HAC. Day-in and day-out, he recruited volunteers, community-based organizations that provided services to anyone who came calling, support from local elected officials, and the backing of pastors and clergy, who have direct contact with thousands of congregants, many of whom were too afraid to ask for services due to their ignorance of government and its responsibilities to them. HAC grew and now it is an established organization in New York City and Haiti. Sam stepped aside from leading the organization soon after he saw that its other leadership could continue to build HAC's contacts and fundraise, but remains involved in recruiting volunteers and designing new projects that meet the needs of the Haitian community.

Broad impact is not Sam's only modus operandi. Small kindnesses are just as common from Sam, and in this case one he performed for me will stay with me for a long time to come. In February 2012, around 1 AM, my mother found herself in a position people hardly imagine and never hope for—she was a woman who suffered from rheumatoid arthritis, Type 2 diabetes, and COPD, and that morning she required hospitalization. But she couldn't get an ambulance to the hospital she needed. Emergency services and volunteer ambulance corps were unresponsive. And despite requests, when we finally got an operator from 9-1-1 to confirm an ambulance would be sent, we couldn't get assurances that the ambulance would take my mother to the hospital of her choice--Methodist in Park Slope--where her lung specialist practiced, because we lived closer to other hospitals. After 30 minutes of wringing my hands to no effect, I woke Sam up and asked if he could help. Within a half hour, an ambulance was on-scene with the instructions to head to Methodist Hospital. Sam, working in Community Affairs for the City at the time, helped put me through to the EMS staff on duty that evening who could pre-clear an ambulance to take a caller outside the geographic proximity of the closest hospital. Later that morning, my mother's lung specialist helped diagnose her health flare-up and ameliorate its effects. She was home within a week but her condition that evening was near critical. Thanks to Sam, we got her the help she needed.

Obviously I am a close friend of Sam's and I am biased to believe that he only has the best of intentions and nature; that he would sooner help a person in need than act in any other manner. But believing is made tremendously easier after I've seen what I've seen

and done what I've done with him in his community and across Brooklyn. Sam has never given me reason to doubt my perception that he exemplifies the qualities of a true public servant.

I hope and beg, sir, that you consider the above experiences with Sam. Whatever the final outcome for him, Sam is more than good man, he is a good citizen and the kind we could use a few more of in New York City. That he was even charged with offenses that suggest he lacked fidelity to the public while a government employee crushed his spirits, but never once did it deter his work for others. I can speak to this after being with him for the several days immediately following when Sam surrendered himself. He continued on with his work for the City and efforts with HAC. That perseverance speaks volumes to who he is and what matters to him, more so than my words ever could.

Thank you for taking the time to hear my thoughts on this matter. If you have any questions or require any further comment, please do not hesitate to contact me. I can be reached on my mobile or through e-mail at any point that is convenient.


Respectfully submitted,


Ryan Merola
Student
Brooklyn Law School
917.697.4628
Ryan.Merola@gmail.com

# EXHIBIT H

February 5, 2014

The Honorable Kevin Nathaniel Fox
United States Magistrate Judge
Chief U.S. Magistrate Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007
Courtroom: 228

Dear Judge Fox,

I am contacting you about Samuel Pierre, a defendant in one of your upcoming court cases. Mr. Pierre is being charged with a Class 1 Misdemeanor for receiving a gratuity while employed by a Member of Congress in relation to particular matters pending before the USDHS. I am reaching out to you because Sam has not only been a long-time friend, but he is also an extraordinary person.

I met Sam 12 years ago at a church service at which we were both musicians. He has been nothing but honest, sincere, and professional from day one, and most importantly I have always felt that Sam has an incredible talent for helping people. I have always depended on him any time I needed help. A few years ago I was going through one of the most stressful and scary situations of my life, many people turned their backs on me—not Sam. Sam made a point to call me every day with encouraging words. Without Sam's support I honestly do not think I would've made it out of the situation with my mind in tact. The most important thing in Sam's life is undoubtedly his family and his love for his community. He would do anything for the Haitian community and his family. I have personally witnessed Sam go out of his way for countless people, people he doesn't even know. Sam has always been the kind of person to give you "the shirt off his back." He is a valuable asset to not only his family, but also myriad people within and outside of the Haitian community.

Seldom does one come across someone who can truly be considered a friend. Sam has proven himself to be trustworthy, loyal, honest, and dependable. Sam's reputation for integrity has travelled outside his circle of friends and family to my church. My church considers him to be apart of our family. He has taken his time to build genuine relationships with many of the young people at my church to help guide them. For instance, I was mentoring a young man who was trying to make the decision between living a life of crime and being an asset to his community. Subsequent to introducing him to Sam, I noticed a change in the young man. Later on, I found out that Sam took him to various community functions and offered him an internship. Sam believed in him, even when others chose to "write him off." Currently, that young man is working on obtaining his GED and has plans to become a lawyer. It is because of this, and so many other experiences I've had with Sam, that I am honored to consider him a friend and a brother.

I hope you consider this information in regards to the charges Samuel is facing. Whatever the outcome of the trial, I want it to be known that Samuel is an upstanding citizen of this country, understands his offence and is willing to do whatever it takes to correct this matter.

Thank you for taking the time to hear my thoughts on this matter.

Sincerely,

Brandon Gibson
718.564.0605
telbran@aol.com